John J. Normoyle v. Commissioner.
Normoyle v. Commissioner
Docket No. 5459-67.
United States Tax Court
T.C. Memo 1969-199; 1969 Tax Ct. Memo LEXIS 96; 28 T.C.M. (CCH) 1044; T.C.M. (RIA) 69199; September 29, 1969, Filed. Edward L. Eagle, Jr., Rock Island Bk. & Tr., Rock Island, Ill., *97 for the petitioner. James F. Hanley, Jr., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in the income taxes of petitioner for the taxable years 1962, 1963, and 1964 in the respective amounts of $2,543.16, $3,399.32, and $3,467.07. Due to concessions made by petitioner, the only remaining issue to be decided is whether respondent has erred in disallowing a basis to petitioner regarding real property held by his deceased wife and himself as tenants by the entireties equal to the fair market value thereof at its valuation date in the deceased wife's estate. Findings of Fact All of the facts have been stipulated and we adopt the stipulated facts as our findings of fact. Petitioner, an individual, resides in Moline, Illinois, and he resided there at the time the petition was filed in this case. Petitioner filed his individual Federal income tax returns for the calendar years 1962, 1963, and 1964 on the cash receipts and disbursements basis with the district director of internal revenue, Chicago, Illinois. Mary E. Normoyle (hereinafter referred to as Mary), petitioner's wife, died *98 testate on June 8, 1961. Probate proceedings were instituted on behalf of her estate in Probate Court, Rock Island County, Illinois. Moline National Bank and Helen Z. Timmerman were appointed co-executors. On May 23, 1927, commercial property located at 607 Third Avenue, Moline, Illinois (hereinafter referred to as the commercial property), was conveyed by deed to petitioner and Mary as joint tenants with the right of survivorship. Of the total purchase price, $40,000 was allocated to the buildings. Depreciation was claimed and allowed on petitioner's and Mary's joint Federal income tax returns for the commercial property on the straight line method. Prior to Mary's death, the commercial property had been fully depreciated, with the exception of a capital improvement made in June 1960. The total cost of the improvement was $900.18. Petitioner and Mary, on their joint Federal income tax returns for the years 1960 and 1961, claimed total depreciation for the improvement in the amount of $270.18 which was allowed. The fair market value of the commercial property on June 8, 1962, was $137,000, allocated as follows: $87,000 - Buildings 50.000 - Land Subsequent to the death of *99 Mary and prior to January 1, 1962, petitioner placed the commercial property in the John J. Normoyle Trust, which was a revocable living trust created January 12, 1961. One of the purposes of the trust (hereinafter referred to as trust A) was to manage several of the petitioner's properties. Petitioner subsequently revoked trust A, which 1045 filed its final Federal fiduciary income tax return for the period January 1, 1962, to October 31, 1962. All of the income of trust A was attributable to petitioner, its settlor and beneficiary. Petitioner then caused the commercial property to be transferred from trust A to trust B, a revocable living trust created on September 6, 1962. One of the purposes of trust B was to manage several of petitioner's properties. All of the income of trust B. was attributable to petitioner, its settlor and beneficiary. Trust B filed its initial Federal fiduciary income tax return for the period November 1, 1962, to December 31, 1962. Trust B was revoked by petitioner and filed its final Federal fiduciary income tax return for the period January 1, 1964, to March 31, 1964. Trusts A and B, for the period of their existence during 1962 through 1964, and *100 the petitioner, for the period April 1, 1964, to December 31, 1964, claimed as a basis for depreciation of the commercial property, $66,910, while attributing to the property a 15-year life. The straight line method of depreciation was used. Petitioner determined his basis for depreciation in the commercial property to be $66,910 by subtracting one-half of the depreciation deduction ($20,000) taken on the property on petitioner's and Mary's prior joint Federal income tax returns from the fair market value at June 8, 1962, of the depreciable portion of the property ($87,700). Petitioner then made a further reduction of $90 for a portion of the depreciation taken on the prior returns for the capital improvement made in 1960. The following schedule sets forth the depreciation claimed on the commercial property for the years 1962, 1963, and 1964: Year
Reporting party
1962
Trust A (1-1 to 10-31)
Trust B (11-1 to 12-31)
1963
Trust B
1964
Trust B (1-1 to 3-31)
Petitioner (4-1 to 12-31)
Amount
Year's total
$3,716.85
$4,460.22
743.37
4,456.21
4,456.21
1,114.05
4,456.20
3,342.15
Respondent determined that as of January 1, 1962, the *101 adj Respondent determined that as of January 1, 1962, the adjusted basis of the commercial property equaled the unrecovered cost of the June 1960 improvement, i.e., $630. Respondent thereby increased petitioner's income for the years 1962 through 1964, as follows: Year
Depreciationclaimed
Allowed
1962
$3,716.84
$150 743.37
30
4,460.21
180
1963
4,456.21
180
1964
1,114.05
45 3,342.15
135
4,456.20
180
Increase
Source
$3,566.84
Trust A
713.37
Trust B
4,280.21
4,276.21
Trust B
1,069.05
Trust B
3,207.15
Petitioner
4,276.20
On May 20, 1953, a farm of 260 acres located in Andalusia Township, Rock Island County, Illinois (hereinafter referred to as the farm), was conveyed by deed to petitioner and Mary as joint tenants with right of survivorship. As of January 1, 1962, total depreciation of $12,483.54 had been claimed and allowed on petitioner's and Mary's prior joint Federal income tax returns on the farm's depreciable property. The farm's depreciable property had a total cost of $24,618.91, of which $12,135.37 had been unrecovered through depreciation as of December 31, 1961. The fair market value of *102 the farm as of June 8, 1962, was as follows: Land (260 acres)
$33,000
Buildings:
Stone house
$20,000
Tenant house
8,000
(2) barns - $4,000 each
8,000
Corn crib
1,000
Machine shed
3,000
Miscellaneous buildings 2,000
Total for buildings
42,000 42,000
Total for land and buildings
75,000 1046 The farm consisted of various buildings and a stone house. Petitioner rented the stone house in 1962, 1963, and 1964. Petitioner during the years 1962, 1963, and 1964 claimed a basis of $25,000 in the farm buildings for depreciation and used a straight line method and 15-year life for computing depreciation on them. During these same years, petitioner used a 25-year life, straight line method of computing depreciation on the stone house, claiming a basis in it of $10,500 in 1962 and a basis of approximately $14,000 in 1963 and 1964. Petitioner determined his basis in the farm buildings and the stone house by taking the total fair market value at June 8, 1962, of the buildings on the farm ($42,000, including the stone house) and reducing this total value of $42,000 by one-half of the depreciation claimed and allowed on prior joint Federal income *103 tax returns of petitioner and Mary, or $6,243.27 and rounding off the difference to $35,500, allocating $10,500 to the stone house and $25,000 to the remaining farm buildings. The petitioner used a basis for depreciation for the stone house of $10,500 for 1962 and $14,083.05 for the years 1963 and 1964. The following shows the depreciation claimed by petitioner on his Federal income tax returns for the years 1962, 1963, and 1964 on the property: 1962
1963
1964
Stone house
$ 420.00
$ 563.32
$ 563.32
Farm buildings 1,666.67
1,666.67
1,666.67
2,086.67
2,229.99
2,229.99
Respondent determined that petitioner's total adjusted basis as of December 30, 1961, in the depreciable farm property, which includes the equipment, farm buildings, and stone house, was $12,135.37. Accordingly, respondent disallowed depreciation claimed by petitioner on the depreciable farm property, including the stone house, in the amounts of $932.65, $1,155.97, and $1,179.03 for the years 1962, 1963, and 1964, respectively. Petitioner's income was thereby increased in corresponding amounts. A Federal estate tax return for Mary, dated August 31, 1962, choosing the alternate *104 valuation date was filed by the coexecutors on September 5, 1962. Both the farm and commercial property were included in schedule E of the return at values of $75,000 and $137,000, respectively. Both properties were set forth on schedule M of the return as "bequests, etc., to surviving spouse (Marital Deduction)." The total bequest, shown on the schedule M as passing to petitioner as surviving spouse and shown as being entitled to the marital deduction, totaled $307,557.10. The inclusion or exclusion of either or both of the farm or commercial property in the estate tax return of Mary would not have affected the estate tax due from the estate. The estate tax paid for the estate was $48,171.68. The co-executors of the estate of Mary E. Normoyle neither at the time of the filing of the estate tax return nor at any time prior to or thereafter submitted or offered to submit any facts which would indicate what person or persons had furnished the consideration used to acquire either the commercial property or the farm. Ultimate Findings No part of the consideration paid for either parcel of the real property in controversy herein was paid by decedent. The value of neither parcel *105 was required by law to be included in the deceased wife's estate, nor was such value includable therein. The basis for depreciation as of January 1, 1962, of the commercial property held by the petitioner is cost ($40,000), as adjusted for capital improvements ($900.18), less depreciation claimed and allowed for the prior years ($40,270.18), and the basis totals $630. The basis for depreciation as of January 1, 1962, of the farm held by petitioner is the cost as adjusted by improvements ($24,618.91), less depreciation claimed and allowed for prior years ($12,483.54), and the basis totals $12,135.37. Opinion In this case, petitioner avowedly and intentionally seeks a stepped-up basis (adjusted fair market value) for two parcels of real property upon the sole premise that, being jointly and severally held by him and his wife, the value thereof was included in her estate at her death by her executors who chose not to make any showing that 1047 the consideration therefor was paid in whole or in part by anyone other than the decedent. [1] We find the premise to be so slender a reed as not to withstand the pressure of the respondent's presumption of correctness in his determination *106 that the value of such property was nevertheless not required to be included nor shown to be includable in the deceased wife's estate. The applicable income tax statutes and regulations are sections 1012, 1014(a) and (b)(9), 1016(a)(1) and (2)(A) and (B) of the Internal Revenue Code of 1954[2] and sections 1.1012-1(a), 1.1014-1(a), 1.1014-2(b) (1) and (b)(2), 1.1014-6(a)(1) and (a)(2) of the Income Tax Regulations.[3] Petitioner places his reliance upon the estate tax provisions of section 2040 of the 1954 Code. [4] It is his contention that the fact of inclusion in his deceased wife's estate for estate tax purposes of the value of the two parcels of jointly held property here involved is conclusive of the question raised herein by virtue of section 1014(b)(9) which provides that if the value of the property "is required to be included [in a decedent's estate] in determining the value of the decedent's gross estate," it constitutes property acquired from a decedent within the meaning *107 of subsection (a), the basis of which property will be its fair market value at the applicable valuation date of the decedent's estate. *108 Petitioner has intentionally refrained from introducing evidence relating to the consideration, if any, furnished either by petitioner or his deceased wife for the acquisition of such real property. He contends that section 2040 and the regulations thereunder, having been interpreted consistently in favor of respondent in estate tax litigation, now estop respondent in the basis issue before us. We think he does not read section 1014(b)(9) or the applicable regulation with sufficient care. It is not sufficient either under section 1014(b)(9) or regulations section 1.1014-2(b)(2)(ii) that the value of property be in fact included by executors or administrators in a decedent's estate, for under that statute it must be required to be included therein, and under the regulation, such value must be includable therein. The words "required" and "includable" have the necessary connotations as used, that in order to constitute property acquired from a decedent, the value thereof must be both required to be included by law and includable under the law in the decedent's estate. This is the petitioner's burden of proof which he has knowingly refrained from sustaining. [5]
*109 Because petitioner has failed to show what, if any, consideration was paid for the property involved by either himself or his deceased wife, it follows that we have 1048 no basis for holding that it constituted property acquired from a decedent or which passed from decedent to petitioner, which holding is necessary preliminary to a finding that he is entitled to the stepped-up basis he seeks. No showing whatsoever is made which would support a finding that the real property in controversy passed from decedent to petitioner. For all the evidence discloses, the property did not pass to him from the deceased wife or her estate, but merely devolved to him as a matter of law because of the joint tenancy in which it was held. Its inclusion in the decedent's estate is not shown to be for any other purpose than computation of estate tax and, as we have held above, its inclusion for that purpose is not shown to be required by law. The identical issue has recently been decided by us in Richard v. Madden, 52 T.C. - (Aug. 21, 1969), adversely to the taxpayer. Each argument here presented was there discussed. On the authority of that case, we hold for respondent herein. Decision will *110 be entered for the respondent. 1049 Footnotes
1. Another way of expressing petitioner's position is that because the executors failed to make such showing, that fact is conclusive with respect to the source of the consideration being the wife.↩
2. asec. 1012. basis of property - cost./ The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses). The cost of real property shall not include any amount in respect of real property taxes which are treated under section 164(d) as imposed on the taxpayer. SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT. (a) In General. - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent * * * shall * * * be the fair market value of the property * * * at the applicable valuation date * * * (b) Property Acquired from the Decedent. - For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent: * * * (9) * * * property acquired from the decedent * * * if by reason thereof the property is required to be included in determining the value of the decedent's gross estate * * *. In such case * * * the basis shall be the amount determined under subsection (a) reduced by the amount allowed to the taxpayer as deductions in computing taxable income under this subtitle or prior income tax laws for exhaustion, wear and tear * * * before the death of the decedent. * * * SEC. 1016. ADJUSTMENTS TO BASIS. (a) General Rule. - Proper adjustment in respect of the property shall in all cases be made - (1) for expenditures * * * properly chargeable to capital account * * * * * * (2) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount - (A) allowed as deductions in computing taxable income under this subtitle or prior income tax laws, and (B) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer's taxes under this subtitle (other than chapter 2, relating to tax on self-employment income), or prior income, war-profits, or excess-profits tax laws but not less than the amount allowable under this subtitle, or prior income tax laws. * * * ↩
3. Sec. 1.1012-1 Basis of property. (a) General rule. In general, the basis of property is the cost thereof. The cost is the amount paid for such property in cash or other property. * * * Sec. 1.1014-1 Basis of property acquired from a decedent. (a) General rule. The purpose of section 1014 is, in general, to provide a basis for property acquired from a decedent which is equal to the value placed upon such property for purposes of the Federal estate tax. Accordingly, the general rule is that the basis of property acquired from a decedent is the fair market value of such property * * * at the alternate valuation date * * *. Property acquired from a decedent includes * * * property required to be included in determining the value of the decedent's gross estate * * * Sec. 1.1014-2 Property acquired from a decedent. * * * (b) Property acquired from a decedent dying after December 31, 1953 - (1) In General. In addition to the property described in paragraph (a) of this section, and except as otherwise provided in subparagraph (3) of this paragraph, in the case of a decedent dying after December 31, 1953, property shall also be considered to have been acquired from the decedent to the extent that both of the following conditions are met: (i) the property was acquired from the decedent * * * and (ii) the property is includible in the decedent's gross estate * * * (2) Rules for the application of subparagraph (1) of this paragraph. Except as provided in subparagraph (3) of this paragraph, this paragraph generally includes all property acquired from a decedent, which is includible in the gross estate of the decedent * * * Sec. 1.1014-6 Special rule for adjustments to basis where property is acquired from a decedent prior to his death. (a) In general. (1) The basis of property described in section 1014(b)(9) which is acquired from a decedent prior to his death shall be adjusted for depreciation, obsolescence, amortization, and depletion allowed the taxpayer on such property for the period prior to the decedent's death. * * * (2) Where property coming within the purview of subparagraph (1) of this paragraph was held by the decedent and his surviving spouse * * * as joint tenants with right of survivorship, and joint income tax returns were filed by the decedent and the surviving spouse in which the deductions referred to in subparagraph (1) were taken, there shall be allocated to the surviving spouse's interest in the property that proportion of the deductions allowed for each period for which the joint returns were filed which her income from the property bears to the total income from the property. Each spouse's income from the property shall be determined in accordance with local law. * * * Example (2). On July 1, 1952, H purchased for $30,000 income-producing property which he conveyed to himself and W, his wife, as tenants by the entirety. Under local law each spouse was entitled to one-half of the income therefrom. H died on January 1, 1955, at which time the fair market value of the property was $40,000. The entire value of the property was included in H's gross estate. H and W filed joint income tax returns for the years 1952, 1953, and 1954. The total depreciation allowance for the year 1952 was $500 and for each of the other years 1953 and 1954 was $1,000. One-half of the $2,500 depreciation will be allocated to W. The adjusted basis of the property in W's hands of January 1, 1955, was $38,750 ($40,000, value on the date of H's death, less $1,250 depreciation allocated to W for periods before H's death). However, if, under local law, all of the income from the property was allocable to H, no adjustment under this paragraph would be required and W's basis for the property as of the date of H's death would be $40,000. ↩
4. SEC. 2040. JOINT INTERESTS. The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth * * *↩
5. No contention is made here concerning a possible application of the principle of res adjudicata due to the probate of decedent's estate and we do not consider that question. Likewise, there is no dispute between the parties as to the proper application of the basis adjustment sections of the Code.↩